Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESHA GAMINO, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiff,*<br><br>v.<br><br>THINX, INC.,<br><br>　　　　*Defendant.* | Case No. 5:23-cv-2067<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I.     Introduction..................................................................................................... 1

II.    Parties. ............................................................................................................ 2

III.   Jurisdiction and Venue. ................................................................................. 2

IV.   Facts................................................................................................................ 3

      A.     Defendant's period underwear. ........................................................ 3

      B.     Defendant's representations mislead reasonable consumers. ......... 8

      C.     Defendant is aware of its misrepresentations. ................................ 8

      D.     Plaintiff was misled by Defendant's misrepresentations. ............. 11

      E.     No adequate remedy at law. ........................................................... 12

V.     Class Action Allegations............................................................................... 13

VI.   Claims. .......................................................................................................... 14

      First Cause of Action: Violation of California's False Advertising Law, Bus.
           & Prof. Code §§ 17500 et. seq. .................................................... 14

      Second Cause of Action: Violation of California's Consumer Legal
           Remedies Act ................................................................................ 15

      Third Cause of Action: Violation of California's Unfair Competition Law........... 18

      Fourth Cause of Action: Breach of Express Warranty ............................... 19

      Fifth Cause of Action: Breach of Implied Warranty ................................... 21

      Sixth Cause of Action: Quasi-Contract/Unjust Enrichment ...................... 22

      Seventh Cause of Action: Negligent Misrepresentation ............................ 22

      Eighth Cause of Action: Intentional Misrepresentation ............................. 23

VII.   Relief. ........................................................................................................... 24

i

## I.   Introduction.

1.   Thinx designs, markets, and sells period underwear.  Period underwear is underwear that is intended to be worn during menstruation.[1]  The underwear contains a special fabric layer that traps blood and liquid, and prevents them from leaking onto clothing.

2.   According to Thinx, its period underwear is "period proof."  It "prevents leaks," can "last all day," and can "replace the need for disposable products such as pads, tampons, liners, and cups."[2]

3.   Thinx also makes specific claims about how much fluid each of its products absorb.  For example, Thinx represents that its Super Absorbency Cotton Brief "holds 5 regular tampons' worth," or "45mL."  These representations are made for each of Thinx's products, both on the website and on the product packaging itself.

4.   But the Thinx products do not work as advertised.  They don't last all day, prevent leaks, or replace the need for disposable products.  They do not absorb the specific amounts of fluid claimed.  Instead, the products leak, fail to hold the claimed amounts of fluid, and do not replace the need for disposable products like tampons or pads.

5.   Plaintiff Tesha Gamino purchased Thinx's period underwear products. Like Thinx's other customers, when Ms. Gamino bought the products, she read and relied on Thinx's representations that the products prevent leaks and hold specific amounts of fluid.  She further relied on warranties that the products were fit for their intended use, as period underwear.  These reasonable beliefs are what caused her to buy from Thinx.  If she had known the truth, she would not have bought them.

6.   Had Thinx been truthful, Plaintiff and other consumers would not have purchased the products, or would have paid less for them.

---

[1] https://www.webmd.com/women/period-underwear
[2] https://www.thinx.com/thinx/faq

1

7.     Plaintiff brings this case for herself and the other customers who purchased Thinx Products.

**II.     Parties.**

8.     Plaintiff Tesha Gamino is a citizen of California, domiciled in Riverside County.

9.     The proposed class includes citizens of every state.

10.     Defendant Thinx, Inc. is a Delaware corporation with its principal place of business at 1836 Westchester Ave, 3240, Bronx, New York 10472.

11.     Defendant makes, markets, and sells period underwear (the "Products").

**III.     Jurisdiction and Venue.**

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

13.     This Court has personal jurisdiction over Defendant.  Defendant does business in California.  It advertises and sells its Products in California, and serves a market for its Products in California.  Due to Defendant's actions, its Products have been marketed and sold to consumers in California, and harmed consumers in California.  Plaintiff's claims arise out of Defendant's contacts with this forum.  Due to Defendant's actions, Plaintiff purchased Defendant's Products in California, and was harmed in California.

14.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state.  Defendant advertises and sells its Products to customers in this District, serves a market for Products in this District, and Plaintiff's claims arise out of Defendant's contacts in this forum.

15.     Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

**IV.   Facts.**

    **A.   Defendant's period underwear.**

    16.    Thinx makes, markets, and sells its Products[3] nationwide, including directly to consumers online and through third party retailers.

    17.    According to Thinx, its Products are "Period Proof":



Thinx
https://www.thinx.com › thinx › collections › shop-all-pe...  ⋮

**Shop all | Period Proof Underwear**

Shop all **Thinx** reusable period panties that absorb your flow and protect from leaks, while keeping you feeling dry and fresh all day.

    18.    Thinx also claims that its Products will "prevent[] leaks," can "last all day," and can "replace the need for disposable products such as pads, tampons, liners, and cups."[4]  Thinx says its "Period Proof" Products will "keep[] you feeling dry and fresh all day."

    19.    Thinx also makes specific claims about the specific amounts of fluid that each of its Products can absorb.  Thinx labels each of its Products by absorbency level, ranging from "lightest" to "super."  For each of these absorbency levels, Thinx makes specific claims about the amount of fluid the Product holds.  For example, according to Thinx, a Product rated "super" holds 5 regular tampons' worth, or 45mL, of fluid.  In contrast, a Product rated "lightest" holds one tampon's worth, or 9.0 mL, of fluid.

---

[3] The Products include the Hiphugger, Hi-Waist, Boyshort, Modal Cotton Brief, Modal Cotton Bikini, Sleep Shorts, Cotton Bikini, Cotton Brief, Cotton Hi-Waist, and Cotton Boyshort.

[4] https://www.thinx.com/thinx/faq

3

20.    Thinx's website describes it as below:

**Thinx absorbencies**

| | super | heavy | moderate | light | lightest |
|---|---|---|---|---|---|
| regular tampon | 5 | 4 | 3 | 2 | 1 |
| menstrual cup | 1.5 | 1.2 | 0.9 | 0.6 | 0.3 |
| pantyliner | 7.5 | 6.0 | 4.5 | 3.0 | 1.5 |
| regular pad | 2.5 | 2.0 | 1.5 | 1.0 | 0.5 |
| mL | 45.0 | 36.0 | 27.0 | 18.0 | 9.0 |
| tsp | 9.1 | 7.3 | 5.5 | 3.7 | 1.8 |

21.    The representations about absorbency levels are made repeatedly throughout Thinx's Product pages, website, packaging, and on the Products themselves.

22.    For example, the Product page and packaging for the Super Absorbency Hi-Waist Product states that it absorbs up to 5 regular tampons' worth, or 45 mL, of fluid:

4

Product packaging:



Website product page:[5]

 

---

[5] https://www.thinx.com/thinx/products/super-hi-waist?variant=31655479541832

23.     Representations about absorbency are also made on the Product itself:



24.     Similarly, the Product packaging for the Moderate Absorbency Boyshort states that it absorbs up to 3 regular tampons' worth or 27 mL of fluid:

Product packaging:



6

Website page:[6]



Product label:



25.     For purposes of the claims asserted in this action, each of Defendant's Products are substantially similar to the other, in that: (1) each Product is intended for use as period underwear, and is distributed, marketed, and sold by Defendant, (2) the Product packaging, label, and product pages for each Product make specific absorbency claims, and (3) the Products' actual absorbency does not match Defendant's claims.

26.     Based on the marketing materials and packaging, a reasonable consumer would believe that Defendant's period underwear Products could hold the advertised amounts of fluid and prevent leaks.

27.     But the truth is, the Products do not absorb the advertised amounts of fluid, and thus leak.  Testing was performed on two representative Products by using cough syrup to mimic the viscosity of menstrual flow, just as manufacturers do to test

_____

[6] https://www.thinx.com/thinx/products/boyshort?variant=32896012935

pads and tampons, and applying 5mL of cough syrup to the Products nine times every 30 minutes.  At the end of testing, none of the Products were able to absorb the specific amounts of fluid advertised.  Instead, all of the Products (i.e., 100% of the tested Products) leaked.

28.    The entire purpose of purchasing period underwear is so that the underwear absorbs fluid.  Thus, the fact that the Products do not hold the claimed amounts of fluid, and instead leak, is material to a reasonable consumer.

29.    By falsely claiming that the Products absorb the specified amounts of fluid, Defendant misleads consumers into purchasing the Products, and paying more for them than they otherwise would.

**B.    Defendant's representations mislead reasonable consumers.**

30.    Based on Defendant's marketing and packaging, reasonable consumers would expect that the listed absorbency levels accurately represent the amount of fluid the Products can absorb.  Similarly, a reasonable consumer would expect that these Products work as period underwear and prevent leaks.

31.    Consumers reasonably rely on Defendant's representations on the packaging, marketing, and advertisements for the Products.  The representations on the packaging, marketing and advertisements are made directly to buyers.  The absorbency levels are prominently displayed on the webpages describing the Products, and on the Products themselves.  These representations lead reasonable consumers to believe that the Products are fit for their ordinary use as period underwear, and hold specific amounts of fluid and prevent leaks.

32.    Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.

**C.    Defendant is aware of its misrepresentations.**

33.    As a maker and merchant of period underwear products, Defendant is aware that its marketing and packaging contains misleading information about the Products' absorbency levels and leak protection.

34.     On its website, Defendant claims that it uses a laboratory to test the "absorbency capacity" of its Products.[7]  Thus, based on its own tests, Defendant knows that its absorbency claims are false and misleading:

> We also test our finished products through an accredited, globally recognized third-party laboratory to help ensure they are compliant with U.S. and international regulations. These tests also include absorbency capacity, usability, and wearability.

35.     Defendant also knows the truth because consumers have repeatedly posted reviews stating that the Products leak and fail to absorb the claimed amounts of fluid. As a consumer product company, Defendant monitors and keeps track of consumer reviews and complaints, including on retail sites like Amazon.com and Target.  This is diligence that large companies like Defendant routinely do when selling a consumer product.  Defendant even uses consumer reviews in its marketing and the front page of its website.

36.     Below are examples of the complaints:



---



Shop all Thinx

**Thinx for All Women's Moderate Absorbency Boy Shorts Period Underwear - Black XS**

★★★★☆ 92 ⌄

### Does Not Work!

★☆☆☆☆ | ⊗ Would not recommend

Buyer - 1 year ago, Verified purchaser

Leaked on first use in less than 15 minutes...held almost nothing before failing. Complete waste is money.

☆☆☆☆☆

### Very comfortable

They are super comfortable, but unfortunately my heavy days are to much for them. I end up going through 6 pairs in one day and still have yet to see a leak free day.



Shop all Thinx

**Thinx for All Women's Moderate Absorbency Boy Shorts Period Underwear - Black XS**

★★★★☆ 92 ⌄

### Not entirely leakproof

★☆☆☆☆ | ⊗ Would not recommend

Ginanvb - 9 months ago

Not leak proof for just a few hours into then first day of my cycle

☆☆☆☆☆

### Boy Short

I don't like the cut...I bought several styles just to test...when I have my period its extremely heavy and these thinx don't cut it...i over flow and I work long hours and I don't have time to deal with messes. So I keep my thinx with pads...because I don't trust that it will hold what I produce in a few hours... I can change 6 pads in 8 hours. This is on my first couple days. or more...so I like but...they are not replacing my use of pads as extra protection.

**D.      Plaintiff was misled by Defendant's misrepresentations.**

37.      On November 26, 2022, Plaintiff Tesha Gamino purchased the "Thinx for All Women's Moderate Absorbency Boy Shorts Period Underwear" from Target while living in Riverside, California.  The Product did not work, but she believed it was due to the fact that the Product was a size too small.

38.      On February 4, 2023, Plaintiff tried again, and purchased Products in a larger size.  This time, she purchased the "Thinx for All Moderate Absorbency Boy Short Period Underwear" and "Thinx for All Super Absorbency High Waist Brief Period Underwear" from Target while living in Riverside, California.  Again, the Products did not work.

39.      When Ms. Gamino purchased each of the Products, she read and relied on the representations in the marketing material, product packaging, and the Products themselves that the products prevent leaks and hold specific amounts of fluid.  When purchasing the Products, she read and relied on each of the Product descriptions on the Thinx website.  She also read and relied on each Product's descriptions on the Target website.  After she received the Products, she also read and relied on the statements in the Product packaging.  The Product descriptions (on both Thinx and Target websites) and the Product packaging expressly stated that Thinx for All Women's Moderate Absorbency Boy Short Period Underwear can hold up to 3 regular tampons or 27mL of fluid, and that Thinx for All Super Absorbency High Waist Brief Period Underwear can hold up to 5 regular tampons or 45mL of fluid.  Ms. Gamino read and relied on each of these representations.[8]

40.      She relied on the warranties that the Products were fit for their intended use, as period underwear.  She would not have purchased the Products if she had known that the Products did not hold the advertised amounts of fluid, leaked, and were not fit for use as period underwear.

_____

[8] *See* ¶¶21-24.

41.     Ms. Gamino suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misrepresentations.  She likes the concept of the Thinx Products, and would purchase them again if she could feel sure that Defendant would not illegally deceive her.  But without an injunction, she cannot trust that Defendant will comply with the consumer protection statutes.

**E.     No adequate remedy at law.**

42.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  To obtain a full refund as damages, Plaintiff must show that the Product she received has essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased a Product that she would not otherwise have purchased, but for Defendant's misrepresentations and omissions.  Obtaining a full refund at law is less certain that obtaining a refund in equity.

43.     In addition, the elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages.  No such requirements exist to obtain restitution.  Obtaining damages under the CLRA requires Plaintiff to show that Defendant made negligent or fraudulent misrepresentations.  No such requirement exists for Plaintiff to obtain equitable relief, for example under the "unfair" or "unlawful" prong of the UCL.  Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

44.     Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.  Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

1

## V.    Class Action Allegations.

2        45.    Plaintiff brings the asserted claims on behalf of the proposed class of:

3     •  Nationwide Class: all persons who, within the applicable statute of limitations

4        period, purchased one or more Thinx Products for personal use (the

5        "Nationwide Class").

6     •  California Subclass: all persons who, while in the state of California and within

7        the applicable statute of limitations period, purchased one or more Thinx

8        Products for personal use (the "California Subclass").

9        46.    The following people are excluded from the proposed class: (1) any Judge

10  or Magistrate Judge presiding over this action and the members of their family; (2)

11  Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in

12  which the Defendant or its parents have a controlling interest and their current

13  employees, officers and directors; (3) persons who properly execute and file a timely

14  request for exclusion from the class; (4) persons whose claims in this matter have been

15  finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and

16  Defendant's counsel, and their experts and consultants; and (6) the legal representatives,

17  successors, and assigns of any such excluded persons.

18              *Numerosity & Ascertainability*

19        47.    The proposed class contains members so numerous that separate joinder of

20  each member of the class is impractical.  There are tens or hundreds of thousands of

21  class members.

22        48.    Class members can be identified through Defendant's sales records and

23  public notice.

24              *Predominance of Common Questions*

25        49.    There are questions of law and fact common to the proposed class.

26  Common questions of law and fact include, without limitation:

27        (1) whether Defendant made false or misleading statements of fact in its

28        advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of an express or implied warranty;

(4) whether Defendant was unjustly enriched by the sale of misrepresented period underwear;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

50.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Thinx Products.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### First Cause of Action:

### Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 et. seq.

### (By Plaintiff and the California Subclass)

52.     Plaintiff incorporates each and every factual allegation set forth above.

53.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

54.     Defendant has violated section 17500 of the Business and Professions Code.

55.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements, marketing materials, packaging, and the Product labels to subclass members.

56.     Defendant did this by advertising false claims of leak protection and false absorbency levels of fluids regarding its Products on its Product pages, packaging, and the Products themselves.

57.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

58.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements on the Product pages and packaging when purchasing Thinx Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

59.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

60.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

61.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Thinx Products if they had known the Products cannot hold specific levels of fluid and instead leak, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations, and/or (c) they received a Product that does not work for its intended purpose and is thus worthless to Plaintiff and the subclass.

<u>**Second Cause of Action:**</u>

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiff and the California Subclass)**

62.     Plaintiff incorporates each and every factual allegation set forth above.

63.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

15

64.     Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

65.     Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

66.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

67.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by representing that its Products hold specific amounts of fluid, when in fact they do not.  These representations were made in the advertisements, marketing materials, packaging, and the Product labels to subclass members.

68.     Defendant violated, and continues to violate, section 1770 of the California Civil Code.

69.     Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that its Products have characteristics or benefits that they do not have.  Defendant represents that its Products hold specific amounts of fluid, when in fact they do not.

70.     Defendant violated, and continues to violate, section 1770(a)(7) of the California Civil Code by representing that its Products are of a particular standard, quality, or grade, when they are not.  Defendant represents that its Products hold specific amounts of fluid, when in fact they do not.

71.     Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by representing that its Products hold specific amounts of fluid, when in fact they do not.

72.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

73.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

74.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

75.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

76.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Thinx Products if they had known the Products cannot hold specific levels of fluid and instead leak, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations, and/or (c) they received a Product that does not work for its intended purpose and is thus worthless to Plaintiff and the subclass.

77.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Gamino, on behalf of herself and all other members of the subclass, seeks injunctive relief.

78.     CLRA § 1782 NOTICE.  On October 3, 2023, a CLRA demand letter was sent to Defendant's New York headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

79.     A CLRA venue declaration is attached.

**<u>Third Cause of Action:</u>**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Subclass)**

80.     Plaintiff incorporates each and every factual allegation set forth above.

81.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

82.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

83.     Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

*The Fraudulent Prong*

84.     As alleged in detail above, Defendant's representations that its Products can hold specific levels of fluid were false and misleading.

85.     Defendant's representations were misleading to Plaintiff and other reasonable consumers.

86.     Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

*The Unfair Prong*

87.     As alleged in detail above, Defendant committed "unfair" acts by falsely representing that its Products were fit for ordinary use as period underwear, and that the Products can hold specific levels of fluid.

88.     Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

89.     The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the characteristics

of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

90.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

91.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

\* \* \*

92.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Thinx Products.  Defendant's representations were a substantial factor in Plaintiff's purchase decision.

93.    In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Thinx Products.

94.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

95.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Thinx Products if they had known the Products cannot hold specific levels of fluid and instead leak, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations, and/or (c) they received a Product that does not work for its intended purpose and is thus worthless to Plaintiff and the subclass.

### Fourth Cause of Action:

### Breach of Express Warranty

### (By Plaintiff and the Nationwide Subclass)

96.    Plaintiff incorporates each and every factual allegation set forth above.

97. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

98. As detailed above, Defendant makes, markets, and sells the Thinx Period Underwear Products.

99. As detailed more fully above, Defendant expressly warrants, through statements in the marketing materials and the packages themselves, that the Products prevent leaks, and that they hold specific amounts of fluid.

100. For example, Defendant expressly represents that the Super Absorbency products hold "up to 5 regular tampons'" or "45mL" worth of fluid. Defendant expressly represents that its Moderate Absorbency products holds "up to 3 regular tampons'" or "27mL" worth of fluid. This is an affirmation of fact about the Products (i.e., a representation that the Products will hold specific amounts of fluid) and a promise relating to the goods.

101. This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

102. In fact, the Products do not conform to these representations because they do not absorb the advertised amount of fluid and fail to prevent leaks.

103. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on October 3, 2023.

104. Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Thinx Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products are sold at a price premium due to the warranty, and/or (c) they received a Product that does not work for its intended purpose and is thus worthless to Plaintiff and the class.

**Fifth Cause of Action:**

**Breach of Implied Warranty**

**(By Plaintiff and the Nationwide Subclass)**

105. Plaintiff incorporates each and every factual allegation set forth above.

106. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

107. As the designer of the period underwear, Defendant impliedly warranted that the Thinx Products were of merchantable quality and were fit for their ordinary use as period underwear. In fact, the Products, when sold and at all times thereafter, were not in merchantable condition and were not fit for the ordinary purpose for which period underwear is used. Specifically, the Products do not absorb the advertised amount of fluid and instead leak. Thus, they are not of merchantable condition or fit for their ordinary use.

108. Thus, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

109. This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

110. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on October 3, 2023.

111. Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Thinx Products if they had known the Products cannot hold specific levels of fluid and instead leak, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations, or (c) they received a Product that does not work for its intended purpose and is thus worthless to Plaintiff and the class.

### Sixth Cause of Action:

### Quasi-Contract/Unjust Enrichment

### (By Plaintiff and the Nationwide Class)

112.   Plaintiff incorporates each and every factual allegation set forth above.

113.   Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

114.   Plaintiff and class members purchased Thinx Products.  They reasonably believed that the Products would function as advertised, and would be fit for their expected ordinary purpose.  Plaintiff and class members did not, and could not, have known that Products do not work as advertised.

115.   As alleged in detail above, Defendant's false and misleading representations caused Plaintiff and the class to purchase Thinx Products and to pay a price premium for these Products.

116.   In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

117.   Plaintiff and the class seek restitution.

### Seventh Cause of Action:

### Negligent Misrepresentation

### (By Plaintiff and the Nationwide Class)

118.   Plaintiff incorporates each and every factual allegation set forth above.

119.   Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

120.   As alleged more fully above, Defendant made false representations to Plaintiff and California Subclass members concerning the specific absorbency levels and leak protection of the Products.  These representations were made on the marketing materials, the Product packaging, and on the Products themselves.

121. These representations were false.

122. When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

123. Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

124. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Thinx Products.

125. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

126. Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Thinx Products if they had known the Products cannot hold specific levels of fluid and instead leak, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations, and/or (c) they received a Product that does not work for its intended purpose and is thus worthless to Plaintiff and the class.

## Eighth Cause of Action:

## Intentional Misrepresentation

## (By Plaintiff and the Nationwide Class)

127. Plaintiff incorporates each and every factual allegation set forth above.

128. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

129. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and class members concerning the specific absorbency levels and leak protection of the Products.  These representations were made on the Product pages, packaging materials, and the Products themselves.

130.    These representations were false.

131.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

132.    Defendant intended that Plaintiff and class members rely on these representations, and Plaintiff and class members read and reasonably relied on them.

133.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Thinx Products.

134.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

135.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Thinx Products if they had known the Products cannot hold specific levels of fluid and instead leak, (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations, and/or (c) they received a Product that does not work for its intended purpose and is thus worthless to Plaintiff and the class.

## VII.    Relief.

136.    Plaintiff seeks the following relief for herself and the class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class and subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;

24

- Any additional relief that the Court deems reasonable and just.

**<u>Demand For Jury Trial</u>**

137.   Plaintiff demands the right to a jury trial on all claims so triable.

Dated: October 10, 2023                           Respectfully submitted,

                                                  By: */s/ Grace Bennett*

                                                  Grace Bennett (Cal. Bar No. 345948)
                                                  grace@dovel.com
                                                  Richard Lyon (Cal. Bar No. 229288)
                                                  rick@dovel.com
                                                  DOVEL & LUNER, LLP
                                                  201 Santa Monica Blvd., Suite 600
                                                  Santa Monica, California 90401
                                                  Telephone: (310) 656-7066
                                                  Facsimile: (310) 656-7069

                                                  *Attorneys for Plaintiff*